UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



—————————————————————————x

JAHIRA ROMERO, Individually and on
Behalf of all Others Similarly Situated,

        Plaintiff,

        -against-                   No. 11 Civ. 386 (CM)

H.B. AUTOMOTIVE GROUP, INC., and
HAROLD BENDELL,

        Defendants.

—————————————————————————x

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR CONDITIONAL
COLLECTIVE ACTION CERTIFICATION; DENYING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION; AND GRANTING DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

McMahon, J.:

      On January 19, 2011, Plaintiff Jahira Romero ("Plaintiff") brought this putative class

action against Defendants H.B. Automotive Group, Inc. ("H.B.") and Harold Bendell ("Bendell")

(collectively, "Defendants"), alleging failure to pay overtime and minimum wage pursuant to the

Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law

(the "NYLL"), NYLL §§ 650 *et seq.*, and also for retaliation under NYLL § 215.

      On November 4, 2011, after class discovery, Plaintiff filed this motion seeking

conditional class certification, court-authorized notice pursuant to section 216(b) of the FLSA,

and an order directing Defendants to produce contact information for all current and former

"non-managerial employees."[1] Plaintiff also asks the Court to certify a NYLL Rule 23 class

---

[1]    Plaintiff originally filed this motion on April 22, 2011 (ECF No. 10), but withdrew it and refiled it at a later
date after obtaining additional discovery from Defendants. Defendants' cross-motion was originally filed on May 6,
2011 (ECF No. 13), but was withdrawn at the same time Plaintiff withdrew her motion for certification.

consisting of all of Defendants' current and former employees in New York who: (1) worked in excess of forty hours per week and were not compensated with overtime pay; and/or (2) did not receive the minimum wage.

Defendants oppose both the collective action and class action certification. On December 2, 2011, with the Court's consent, Defendants cross-moved for summary judgment to dismiss Plaintiff's individual claims for overtime wages for the period while she was employed as a salesperson by Defendants.[2]

For the reasons stated below, Defendants' cross-motion for summary judgment is granted in part and denied in part, and Plaintiff's motion to certify the collective action and class action is denied.

## BACKGROUND

Plaintiff failed to respond to Defendants' Local Civil Rule 56.1 Statement. This failure means that the material facts in Defendants' 56.1 Statement are deemed admitted as a matter of law. *See* Local Rule 56.1(c); *Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 147 (S.D.N.Y. 2002) (McMahon, J.). Only sparing reliance on Defendants' 56.1 Statement is required to dispose of these motions, however.

### I.     The Parties

In a twist on the typical FLSA case (in which named plaintiffs seek conditional certification for a single job position), Plaintiff — the only plaintiff, named or otherwise — was employed in *two* substantially different roles by Defendants between June 2009 and November 2010.

---

[2]    Defendants also moved for summary judgment dismissing Plaintiff's state law "claim" for "liquidated damages," but later withdrew that portion of their cross-motion.

In June 2009, Plaintiff was hired as an automobile salesperson at two of Defendants' locations. In this role, Plaintiff was required to work approximately 55 hours per week. She was paid $150 per week plus commission for any automobiles she sold. She frequently did not sell any automobiles, however, and was paid only $150 for those weeks. Plaintiff claims that she did not receive any compensation for overtime worked, and was often paid below the minimum wage.

In November 2009, Plaintiff became the "Inventory Manager" for both locations. Her job duties included keeping the inventory of the automotive goods stored in the sales department. She was paid $11 per hour, and did not receive any compensation for hours worked over 40. Plaintiff was the only employee Defendants ever hired as an Inventory Manager.

Plaintiff submitted an unsigned affidavit from an Isaias Guzman Tavarez ("Tavarez"), one of Defendants' former employees, which was apparently dictated to one of Plaintiff's lawyer's paralegals over the phone. This unsigned affidavit is inadmissible, because it is unsworn and not submitted under penalty of perjury, and I will not consider it. *Sam Jin World Trading, Inc. v. M/V Cap San Nicolas*, No. 09 Civ. 3997 (LMM), 2010 U.S. Dist. LEXIS 65963, at *10 (S.D.N.Y. June 30, 2010); *United States v. All Right, Title & Interest in Real Prop. & Appurtenances*, 77 F.3d 648, 657-58 (2d Cir. 1996) ("[T]he submission of [an] unsworn letter was an inappropriate response to the . . . motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court."). Tavarez has not opted-in to this case — even though almost a year has passed since the creation of the unsworn affidavit — and his "affidavit" is not necessary to the disposition of these motions.

H.B. is a New York corporation with a principal place of business in Bronx County, New York. H.B. is a chain of automotive retail and repair dealerships that operate at various locations

throughout New York City. The parties do not specify how many locations H.B. has; Plaintiff seeks to represent a class of employees in six different locations: Bronx Automotive Group, City World Motors LLC, Bronx Kia, City World Hyundai, City World Toyota, and City World Ford. (Pl.'s Mot. for Certification at 10 (ECF No. 24).)

Bendell, according to the Complaint, has an ownership stake in H.B., and is H.B.'s chairman and CEO. (Compl. ¶ 9.) Nothing is said about him in the moving papers.

## II. Plaintiff's Collective Action and Class Action Definitions

Plaintiff seeks to certify a FLSA collective action of

> Current and former employees of Defendants who perform any work in any of Defendants' locations as non-managerial employees who give consent to file a cause of action to recover overtime compensation which is legally due them for the time worked in excess of forty (40) hours in a given work week, as well as to recover the difference between the amount of wages actually paid to them and the statutorily minimum amount due ("FLSA Plaintiffs").

(Compl. ¶ 10; *see also* Mot. for Certification at 1.) It is unclear what Plaintiff means by "non-managerial," especially as Plaintiff is seeking to recover overtime and minimum wages, in part, as an "Inventory *Manager*." She obviously did not intend to exclude her own position from the collective action definition. I assume that Plaintiff contends that her "managerial" title is an honorific and is not indicative of her true status.

The NYLL class which Plaintiff seeks to certify is substantially larger, and consists of

> All persons employed by Defendants to perform any work in any of Defendants' locations in any capacity during the statutory period within the State of New York who (1) worked in excess of forty (40) hours per week and were not compensated with overtime pay; and/or (2) were not compensated at a rate in accordance with the minimum rate of hours laws ("Class Plaintiffs").

4

(Compl. ¶ 17; Pl.'s Reply in Supp. of Certification at 2 (ECF No. 32).)  There is no attempt to limit this to non-managerial employees.

## III.    The Employees in the Putative Classes

The parties have not been clear about the job titles of the employees at issue in this litigation.

During class discovery, Defendants produced "wage and hour information" — including timecard reports and clock-in details — for "non-managerial" employees who worked for Defendants.  Based on her review of that discovery, Plaintiff claims she has identified "at least [67] . . . non-managerial employees, including salespersons, porters, and office staff who were not paid their legally mandated overtime by Defendants," (Pl.'s Mot. for Certification at 5 (ECF No. 24)).  Plaintiff makes no similar claim about minimum wage.

Forty-eight of the 67 employees are/were employed as salespersons, and 19 held other positions.  Four of these 19 were "office staff," five were porters, and 10 are labeled "unidentified non-managerial."  (Pl.'s Reply in Supp. of Certification at 2; Defs.' Opp'n to Certification at 3, 5 (ECF No. 27).)  Defendants seem to claim that, of the 10 unidentified non-managerial employees, four were engaged in sales, one was a partsman, and one was the office manager.  (Sanchez Aff. ¶ 24.)  It is unclear to the Court where Plaintiff, as an Inventory Manager, fits in.  Needless to say, the numbers do not add up, and the parties did not present a clear picture of the number or type of employees at issue.

Of these 19 employees for whom Defendants' records state were not paid overtime, Defendants aver that 13 were in fact compensated for at least some overtime hours worked.  Plaintiff disputes this.

Defendant also alludes that this group of "unidentified non-managerial" employees includes mechanics, but does not provide any evidence to support this contention. (Defs.' Opp'n to Certification at 10.) Instead, Defendants state that they employ "service managers, *mechanics*, service writers, porters, service cashiers, parts counter persons, receptionists, salespersons, a generally sales manager, assistant sales managers, a finance manager, and an office/administration manager." (Sanchez Aff. ¶ 4 (emphasis added).) So while it is possible that a mechanic may be one of the unidentified non-managerial employees, it is by no means a certainty, because all mechanics may have been paid overtime and minimum wage.

In addition to these 67 employees, Plaintiff also identified another 82 "non-managerial" employees for whom overtime records were not found. (Pl.'s Mot. for Certification at 10.) Defendants aver that "most of the [82] employees [without overtime records] identified are salespersons." (*Id.* ¶ 25.)

These employees — 149 in total — worked in six of Defendants' locations. (Pl.'s Mot. for Certification at 10.)

Defendants contend that most of these 149 employees are legally exempt from the FLSA's protections, in whole or in part, based on the duties the employees perform. Defendants maintain that salesmen, partsmen and mechanics are not paid overtime because they are statutorily exempt from the FLSA's overtime requirements. (Sanchez Aff. ¶ 6.) Defendants also aver that the office manager Plaintiff identified as not having been paid overtime is exempt. (*Id.* ¶ 24.) Further, Defendants assert that "there is an issue whether Plaintiff was misclassified as exempt from overtime as an inventory manager," and state, without elaborating further, that "certain managers and administrative staff, depending on their positions and job duties, may also be exempt from overtime." (Defs.' Opp'n to Certification at 10).

6

Plaintiff disputes that Defendants' automotive salespersons qualify for the FLSA's salespersons exemption. As to the rest of the non-managerial positions, Plaintiff ignores the issue, and does not contend that any other employees were misclassified.

Aside from Plaintiff's descriptions of her own jobs in her affidavit, neither party has provided job descriptions for any of the above-identified roles.

***

On November 4, 2011, after class discovery, Plaintiff filed this motion seeking conditional class certification, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing Defendants to produce contact information for all current and former "non-managerial employees." Plaintiff also moves the Court to certify a NYLL Rule 23 class.

Defendants oppose both the collective action and class action certification. On December 2, 2011, with the Court's consent, Defendants cross-moved for summary judgment to dismiss Plaintiff's claims for overtime wages when she was employed as a salesperson by Defendants.

## DISCUSSION

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden

of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

Once the motion for summary judgment is properly made, the burden shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), but must support the existence of an alleged dispute with specific citation to the record materials, Fed. R. Civ. P. 56(c).

While the Court must view the record "in the light most favorable to the non-moving party," *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir.1989) (citations omitted), and "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586 (citations omitted). Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

**I.    Plaintiff's Request for Certification of a FLSA Collective Action is Denied**

Plaintiff moves for conditional certification of her FLSA claims, asserting that all "non-managerial employees" are similarly situated insofar as they were not paid overtime or the minimum rate of pay required by the FLSA. (*See, e.g.*, Vagnini Affirm. Ex. 7; Sinha Affirm. Ex. 2.)

Defendants respond that Plaintiff has failed to define a class of similarly situated employees because: (1) Defendants actually did pay non-salespersons overtime for most weeks in question; (2) Plaintiff has not demonstrated a common plan or policy to deny properly due wages existed; (3) Plaintiff cannot proceed as a collective action on behalf of all salespersons because Plaintiff has no FLSA claim as a salesperson herself; and (4) Defendants' non-managerial employees performed different job functions and had different job titles.

For the reasons discussed below, Plaintiff's motion for conditional certification is denied.

## A.    Legal Standard

### 1.    Introduction

"The FLSA was designed to protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243 (2d Cir. 2011) (quoting 29 U.S.C. § 202(a)).  To effectuate this goal, the FLSA requires employers to pay their employees a minimum wage, 29 U.S.C. § 206, and overtime wages — calculated at a rate of "one and one-half times the regular rate" — for each hour worked in excess of 40 hours per week, 29 U.S.C. § 207(a)(1).  These requirements are subject to certain exemptions, discussed below.

To enable employees to enforce their rights under the FLSA, section 216(b) creates a private right of action to recover unpaid overtime compensation, and provides that employees may pursue their claims collectively:

> Any employer who violates [FLSA's substantive provisions relating to minimum wages or maximum hours] shall be liable to the employee or employees affected in the amount of their unpaid [wages], and in an additional equal amount as liquidated damages . . . An action to recover the liability prescribed [in the preceding sentence] may be maintained against any employer . . .

9

> in any Federal or State court of competent jurisdiction by any one
> or more employees for and in behalf of himself or themselves and
> other employees similarly situated. No employee shall be a party
> plaintiff to any such action unless he gives his consent in writing to
> become such a party and such consent is filed in the court in which
> such action is brought.

29 U.S.C § 216(b). The collective action procedure was designed to promote the "efficient

adjudication of similar claims," so that "similarly situated" employees may pool resources to

prosecute their claims. *Lynch v. U.S. Auto. Assoc.*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007)

(citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)). The collective action process

is also intended to encourage judicial economy by "efficient resolution in one proceeding of

common issues of law and fact." *Hoffman-La Roche*, 493 U.S. at 180.

Unlike Federal Rule of Civil Procedure 23, however, the FLSA only authorizes opt-in

collective actions. *Kress*, 263 F.R.D. at 626.

There are three essential features in a FLSA collective action under section 216(b):

> First, in order to participate in a collective action, an employee
> must "opt-in," meaning the employee must consent in writing to
> join the suit and that consent must be filed with the court. Second,
> the statute of limitations runs on each employee's claim until his
> individual Consent Form is filed with the court. Third, to better
> serve the FLSA's "broad remedial purpose," courts may order
> notice to other potential similarly situated employees to inform
> them of the opportunity to opt-in in the case.

*Lynch*, 491 F. Supp. 2d at 367 (citing *Hoffman-La Roche*, 493 U.S. at 173).

Though section 216(b) neither explicitly provides for court-authorized notice nor requires

it, it is "'well settled' that district courts have the power to authorize an FLSA plaintiff to send

such notice." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103-04

(S.D.N.Y. 2003) (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997));

*Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) ("Thus certification is neither

necessary nor sufficient for the existence of a representative action under FLSA, but may be useful as a case management tool for district courts to employ in appropriate cases") (quoting *Hoffman-La Roche*, 493 U.S. at 169, 174)). Orders that authorize notice to be sent are commonly referred to as orders "certifying" that a case be litigated as a collective action. *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) (Lynch, J.).

Federal Rule of Civil Procedure 23's requirements for class certification do not apply to the certification of a collective action under the FLSA. *Espinoza v. 953 Assocs. LLC*, No. 10 Civ. 5517 (SAS), 2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011); *Vogel v. Am. Kiosk Mgmt.*, 371 F. Supp. 2d 122, 127 (D. Conn. 2005) ("The prevailing view in the Second Circuit, and in other Circuits, is that actions . . . pursuant to section 216(b) of the FLSA are not subject to Rule 23 requirements and principles."); *La Belle Farm*, 239 F.R.D. at 368. As a result, the "similarly situated" standard is "considerably more liberal than class certification under Rule 23." *La Belle Farm*, 239 F.R.D. at 368.

### 2. The Relevant FLSA Exemptions

The FLSA's requirements are subject to certain exemptions, the merits of which are not appropriate to reach during the conditional certification stage. *See, e.g.*, *Pippins v. KPMG LLP*, No. 11 CIV. 0377, 2012 WL 19379, at *4 (S.D.N.Y. Jan. 3, 2012) ("The applicability of [the defendant's] affirmative defenses are not at issue on this motion . . . The only issue presently before the Court is whether Plaintiffs have made the preliminary showing to have their entitlement to overtime, and the applicability of these exemptions, litigated as a 'collective action.'"). However, the possible *existence* of exemptions may be relevant to an analysis of whether employees are similarly situated to each other, whether plaintiffs have satisfied the

11

commonality requirement of Federal Rule of Procedure 23, or whether a plaintiff is likely to be an adequate class representative.

There are at least two exemptions to the FLSA which Defendants contend are relevant in this case: (1) for autosalespersons, partsmen, or mechanics; and (2) for administrative employees.

(1) As discussed above, the FLSA's overtime — but not minimum wage — protections do not apply to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." 29 U.S.C. § 213(b)(10)(A).

(2) The FLSA's protections — both minimum wage and overtime — also do not apply to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). At a minimum, the administrative exemption (and possibly the executive exemption) is relevant to this case:

> To be exempt as an administrative employee, the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)-(3).

*Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 630 (E.D. Cal. 2009). Whether an employee falls into the administrative exemption is determined by the employee's job duties. *Id.* An exempt employee's "primary duty" must be exempt work. 29 C.F.R. § 541.700(a).

These exemptions are affirmative defenses to overtime pay claims, and the employer "bears the burden of proving that a plaintiff has been properly classified as an exempt

employee." *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361 (PGG), 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010). "Because the FLSA is a remedial act, its exemptions . . . are to be narrowly construed." *Martin v. Malcom Pimie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

As discussed above, whether an employee is exempt from FLSA overtime coverage based on duties performed is a "mixed question of law and fact." *Downes*, 2007 WL 1468218, at *10.

"The New York State Department of Labor takes the position that the overtime provisions contained in [the NYLL] expressly incorporate the FLSA's exemptions." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, No. 08-CV-1686 NGG RML, 2012 WL 1078230, at *8 (E.D.N.Y. Mar. 30, 2012) (citing 12 N.Y.C.R.R. § 142-2.2). "Federal courts have followed the Department's guidance, applying FLSA exemptions to state Labor Law claims." *Id.* (citing *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 456 n.4 (S.D.N.Y. 2008)). Thus, if Plaintiff is subject to the FLSA's exemptions, she is also exempt from the NYLL's protections. *See Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 CIV. 2400 CM/DCF, 2010 WL 1379778, at *15 n.7 (S.D.N.Y. Mar. 26, 2010). Plaintiff does not dispute this.

### 3. Overview of the FLSA's Two-Stage Certification Process

Courts in the Second Circuit employ a two-stage process to determine whether FLSA certification is proper. *See, e.g.*, *Raniere v. Citigroup Inc.*, No. 11 Civ. 2448, 2011 WL 5881926, at *22 (S.D.N.Y. Nov. 22, 2011); *Lynch*, 491 F. Supp. 2d at 367-68; *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 327 (S.D.N.Y. 2010) ("The dominant approach among district courts in this Circuit is to conduct a two-phase inquiry in determining whether potential opt-in plaintiffs are 'similarly situated.'"); *Myers*, 624 F.3d at 554 (approving of the two-step method in

13

dicta). In the first stage, the Court makes a preliminary determination about whether the named plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to authorize the sending of notice and allow the case "to proceed as a collective action through discovery." *Lynch*, 491 F. Supp. 2d at 368. If the court finds that the named plaintiffs and potential opt-ins are indeed "similarly situated" with respect to their job duties/requirements, compensation, and employer policies, the court "conditionally certifies" the collective action. *Id.* (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007)). The plaintiffs then send court-approved notice to potential members, who may elect to opt-in to the collective action by filing consent forms with the court, and the now-collective action proceeds to discovery. *Id.* Because the clock is running on the claims of potential opt-in plaintiffs all the while, conditional certification is to be decided early in the litigation process, so that class members' claims do not become time-barred.

At the second stage — after discovery and upon the defendant's request — district courts must undergo a more stringent factual analysis to determine whether the collective action members are in fact similarly situated. *Espinoza*, 2011 WL 5574895, at *6; *Indergit*, 2010 WL 2465488, at *4. The court may decertify the action if the record reveals that the employees are not similarly situated; the claims of those who have opted in are then dismissed without prejudice to the filing of individual suits. *Raniere*, 2011 WL 5881926, at *23.

Because this is a motion for conditional certification, the Court need only make a preliminary determination whether the Plaintiffs are "similarly situated."

### 4. The Stage One Standard for Conditional Class Certification

Neither the FLSA nor its implementing regulations defines "similarly situated." *Hoffman*, 982 F. Supp. at 261. However, courts in this Circuit require that plaintiffs only make a

14

"'modest factual showing' that [plaintiffs] and other putative collective action members 'were victims of a common policy or plan that violated the law.'" *Indergit*, 2010 WL 2465488, at *3 (quoting *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008)); *Raniere*, 2011 WL 5881926, at *22 ("At this initial step, Plaintiffs need only provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'") (quoting *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006)); *Hoffman*, 982 F. Supp. at 261. This requirement does not mean that plaintiffs must show that each individual plaintiff's job duties are perfectly identical; rather, plaintiffs need only show that they are similar. *Luque v. AT&T Corp.*, No. C 09-05885 CRB, 2010 WL 4807088, at *4 (N.D. Cal Nov. 19, 2010); *Raniere*, 2011 WL 5881926, at *25 ("The issue here is not whether Plaintiffs and other Loan Consultants were identical in all respects, but 'rather whether they were subject to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.'") (quoting *Vaughan v. Mortg. Source LLC*, No. CV 08-4737 (LDW) (AKT), 2010 WL 1528521, at *7 (E.D.N.Y. Apr. 14, 2010)). Such variances are more appropriately analyzed during the second — decertification — stage. *La Belle Farm*, 239 F.R.D. at 369.

To meet this standard, plaintiffs must proffer "'substantial allegations' of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." *Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859 (PKC), 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 22, 2008) (citing *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078 (RMB), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)); *Indergit*, 2010 WL 2465488, at *3. Plaintiffs bear this burden, and can overcome it by "relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."

*Raniere*, 2011 WL 5881926, at *22 (quoting *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008)).

"Because certification at this first early stage is preliminary and subject to reevaluation, the burden for demonstrating that potential plaintiffs are 'similarly situated' is very low." *Raniere*, 2011 WL 5881926, at *22 (citing *Lynch*, 491 F. Supp. 2d at 368). Other courts describe it as "minimal." *See Damassia*, 2006 WL 2853971, at *3. This low burden is consistent with the "broad remedial purpose of the FLSA." *Raniere*, 2011 WL 5881926, at *22 (quoting *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 336 (S.D.N.Y. 2010)); *Hoffman-La Roche*, 493 U.S. at 173 (1989); *Hoffman*, 982 F. Supp. at 262 (citing cases discussing the broad remedial purpose of the FLSA).

In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims. *Lynch*, 491 F. Supp. 2d at 368; *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385 (CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) ("Weighing of the merits is absolutely inappropriate."). The court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations." *Lynch*, 491 F. Supp. 2d at 368-69; *Hoffman*, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"). District courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche*, 493 U.S. at 174.

### B. Plaintiff's Motion for Conditional Certification of a FLSA Collective Action is Denied

Defendants spend much of their moving papers arguing that they have actually paid most overtime due to Defendants' non-exempt employees. As discussed above, the merits of Plaintiff's claim are not at issue on a motion for conditional certification; at issue is only whether

16

Plaintiff and putative opt-ins were subject to a common plan or policy to deprive them of overtime, and whether they are similarly situated with respect to these claims. I cannot consider Defendants' defense now. But even if payment of such overtime were at issue, Defendants do not contend that they paid *all* overtime that was due, but rather that "*Most* of the employees identified by Plaintiff were actually paid overtime for the weeks identified by Plaintiff." (Sanchez Aff. ¶ 8 (emphasis added).)

For the reasons discussed below, I find that Plaintiff's proposed collective cannot be conditionally certified.

### 1. Plaintiff has Failed to Allege a Common Plan for Violating the FLSA's Minimum Wage Provisions

As discussed above, the standard for conditionally certifying a collective action is lenient. *See, e.g.*, *Raniere*, 2011 WL 5881926, at *22; *Damassia*, 2006 WL 2853971, at *3; *Lynch*, 491 F. Supp. 2d at 368; *Spicer*, 269 F.R.D. at 336; *La Belle Farm*, 239 F.R.D. at 367; *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). Plaintiff need only make a modest factual showing that she and other putative collective action members were victims of a common policy or plan that violated the law, i.e., that they were illegally denied overtime and minimum wage. *See La Belle Farm*, 239 F.R.D. at 367; *Levinson v. Primedia Inc.*, 02 Civ. 2222 (CBM), 2003 WL 22533428, *1 (S.D.N.Y. Nov. 6, 2003). While Plaintiff's burden of proof is low, it is not non-existent — "certification is not automatic." *Raniere*, 2011 WL 5881926, at *23. Plaintiff's "modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citations and quotation marks omitted). Conclusory allegations are not enough to satisfy this burden. *Raniere*, 2011 WL 5881926, at *23.

17

Plaintiff makes no showing that any other "non-managerial" employees were treated as she was in terms of minimum wage. In this case, Plaintiff's showing with respect to minimum wage is limited to her discussion of her own situation as a salesperson, (Romero Aff. ¶¶ 4-7 (describing her job duties and how she personally was paid)), and her statement that, on "knowledge and belief," there are other salespersons who are also being denied overtime and minimum wage protections, (*id.* ¶ 8). With respect to non-salespersons, Plaintiff asserts that they were denied overtime, but says nothing about whether they were paid at least the minimum wage. (*Id.* ¶ 16.) Plaintiff does not include any admissible affidavits from other employees who were not paid minimum wage. More importantly, Plaintiff does not make any showing about a widespread failure to pay minimum wage based on Defendants' pay records, although Plaintiff has had the benefit of class discovery and has had access to them. (Pl.'s Mot. for Certification at 1 n.1 ("Defendants provided over 2,000 pages including wage and hour records of other non-managerial employees spanning from 2005 through 2011."); *see also* Defs.' June 7, 2011 Letter to the Court (ECF No. 18)). In light of this discovery, Plaintiff's allegations made on knowledge and belief are not sufficient to satisfy her minimum burden. *See Barfield v. N.Y. City Health & Hosps. Corp.*, No. 05 CIV. 6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying conditional certification where the plaintiff alleged that, based on "limited anecdotal hearsay," other nurses were not paid overtime); *Levinson v. Primedia Inc.*, No. 02 CIV 2222 (CBM), 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003) (denying conditional certification where the plaintiffs merely alleged that they were not paid minimum wage or overtime, but provided no factual evidence other than the conjecture contained in the plaintiffs' affidavits that other employees were subject to the same pay policies); *Armstrong v. Weichert Realtors*, No. 05 Civ. 3120 (JAG), 2006 WL 1455781 at *1 (D.N.J. May 19, 2006) (insufficient showing where

the plaintiff offered a "one-page declaration . . . as the sole piece of evidence in support of the motion for [collective action] certification"); *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 666 (D. Kan. 2004) ("While . . . plaintiff [need not] come forward with evidence of actual proof of a decision, policy or plan, the initial ad hoc FLSA class certification standard does require plaintiff to provide more than his own speculative allegations, standing alone.").

This Court has certified classes when only two or three identifiable employees were similarly situated, but here, Plaintiff has only been able to identify a single other individual, Tavarez, who contends that he was not paid minimum wages as a salesperson. But Tavarez neither signed his affidavit (drafted approximately one year ago) nor opted-in to this action (which he could have done at any time). When Defendants pointed these flaws out in their responsive papers, Plaintiff abandoned the issue of minimum wage in her Reply; instead, she focused on the showing that she had made with respect to overtime claims. I view this omission — as well as Plaintiff's failure to produce any evidence of a minimum wage violation after being provided discovery — as sufficient to deny Plaintiff's motion to the extent that she seeks to represent a collective action of persons who were non-managerial employees, but who were not paid minimum wage.

### 2. Plaintiff has not met Her Minimal Burden of Showing Her Proposed Collective Action is Similarly Situated

Plaintiff *has* made a showing that Defendants had at least 67 employees who worked more than 40 hours a week, and whose records do not state that they were paid overtime. Plaintiff also identified another 82 "non-managerial employees" (by which I assume she means all non-exempt employees) for whom overtime records were not found. This proposed collective action would consist of employees in "a broad array of job titles and functions," (Pl.'s Reply in Supp. of Certification at 9), including, at least: salespersons, porters, office staff, partsmen, an

19

office manager, and an Inventory Manager. Plaintiff claims that Defendants' "common scheme" to deny overtime wages to their employees binds this diverse class.

Plaintiff's proposed collective action definition has netted some employees whom Defendants have classified as exempt from the FLSA's requirements under the automotive salesperson and administrative employee exemptions, e.g., salespersons and certain office staff. But the propriety of that designation cannot be tested now — although, to the extent that group includes salesmen, partsmen, and mechanics, as Defendants insist, those employees are statutorily disentitled to overtime wages. As far as the Court can tell, the remainder of the employees in the putative collective action are non-exempt (e.g., porters). Thus, with respect to the putative collective action members classified as exempt, Plaintiff is really challenging Defendants' determination that certain of its employees are exempt under the FLSA. These same concerns are not in play with respect to Defendants' non-exempt employees.

In sum, Plaintiff seeks to conditionally certify a collective action consisting of: (1) a set of employees who are classified as exempt and a set of employees who are classified as non-exempt; and (2) employees with different positions and job duties who were classified as exempt under substantially different FLSA exemptions. For these two reasons, as discussed more fully below, this collective action is overbroad and cannot be conditionally certified in its current form.

(1) Where a collective action contains a mix of employees, some of whom are classified exempt from the FLSA's requirements, and some of whom are classified as non-exempt, there is no factual nexus between the collective action members' situations, and conditional certification is not appropriate. *See Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 119-20 (D.D.C. 2004); *Diaz*

*v. Electronics Boutique of Am., Inc.*, No. 04-CV-0840E, 2005 WL 2654270, at \*3-4 (W.D.N.Y.

Oct. 17, 2005).

In *Diaz*, two plaintiffs — one classified as exempt and the other as non-exempt by the

defendant employer — sought to bring a FLSA collective action, claiming that they were

"victims of [the defendant employer's] common practice of failing to pay overtime and other

wages." *Diaz*, 2005 WL 2654270, at \*3. The court found that the plaintiffs were not similarly

situated to one another — because one was classified exempt and the other non-exempt — and

denied conditional certification. The court reasoned that

> The gravamen of [the exempt employee's] claim, as distinct from
> that of the [non-exempt employee], is that [the defendant] avoided
> paying him overtime wages by willfully misclassifying him as
> exempt although his duties consisted primarily of non-exempt
> tasks. [The exempt employee's] claim and the claims of other
> [employees in the same role classified as exempt] thus will involve
> an analysis of daily duties and responsibilities and the amount of
> time spent on each, whereas [the non-exempt employee's] claim
> and the claims of [employees classified as non-exempt] will
> involve an examination of hours worked, payroll records and [the
> defendant's] knowledge and/or permission of the alleged overtime
> hours worked. As such [the two employees] are not similarly
> situated to one another for no factual nexus exists between their
> situations.

*Id.*

Similarly, in *Hunter*, a group of nine plaintiffs sought to conditionally certify a FLSA

collective action on behalf of two groups of employees, one consisting of non-exempt employees

(including the named plaintiffs), and the other consisting of employees designated as exempt

from the FLSA's requirements by the defendant employer. The court first noted that the only

legal issues raised by the non-exempt putative opt-ins "relate to the amount of relief to which

they are entitled." *Hunter*, 346 F. Supp. 2d at 119. The court contrasted this with the claims of

the putative opt-ins that the defendant had classified as exempt, which "would inject into the case

21

an additional legal question bearing on liability[, i.e.,] whether [the defendant] has correctly classified these particular employees as exempt under the FLSA." *Id.* In refusing to conditionally certify a collective action including both classes of employees, the court stated that plaintiffs were unable to "identify a single case where a court has included in the same class in a collective action both employees classified by an employer as non-exempt and employees classified by the employer as exempt," instead concluding that "the cases that have had occasion to address the issue have reached or indicated a contrary result." *Id.* at 120 (citing *Kinnett v. State of Kansas*, No. 90-4209-S, 1991 WL 241832, at *1 (D. Kan. Oct. 30, 1991) (holding that employee who is "classified as a non-exempt" is "not similarly situated to the other exempt plaintiffs because she is non-exempt")).

The results and reasoning in *Hunter* and *Diaz* control here. Plaintiff seeks to conditionally certify a collection action consisting of

> Current and former employees of Defendants who perform any work in any of Defendants' locations as non-managerial employees who give consent to file a cause of action to recover overtime compensation . . . as well as to recover the differences between the amount of wages actually paid to them and the statutorily minimum amount due.

(Compl. ¶ 10; *see also* Mot. for Certification at 1.)

As in *Hunter* and *Diaz*, this proposed FLSA collective action would include non-managerial employees that Defendants admit are non-exempt, such as porters, (*see, e.g.*, Defs.' Opp'n to Certification at 3-4; Sanchez Aff. ¶¶ 10-23), along with employees that Defendants have classified as exempt from overtime, e.g., salespersons, partsmen, and an Office Manager, (*see* Sanchez Aff. ¶¶ 4-6). Including these potentially exempt employees into the collective action would, as in *Hunter*, "inject into the case an additional legal question bearing on liability." *Hunter*, 346 F. Supp. 2d at 119. In other words, the parties would first need to litigate whether

Plaintiff and the putative opt-ins were misclassified — i.e., Defendants' *liability* for overtime wages would need to be established — whereas the non-exempt employees need only determine the *amount* of relief — if any — to which they are entitled. Thus, because the putative opt-ins in the proposed collective action are not similarly situated, the collective action cannot be conditionally certified as it currently stands.

**(2)** The fact that the putative opt-ins may have been misclassified under at least two different exemptions, premised on their different job duties, also militates against conditionally certifying the collective action as proposed. Where plaintiffs assert that they were misclassified as exempt, the focus is on "the nature of the employees' job duties in the context of the relevant exemption criteria." *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (2000); *see also* 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."). A collective action is only appropriate where "the plaintiff[s] make[] some showing that the nature of the work performed by other claimants is at least similar to [their] own." *Id.* (internal quotation marks omitted); *see also Lynch*, 491 F. Supp. 2d at 370 ("Given that Lynch shares these similar job duties with other USAA special investigators, his motion for conditional certification should be granted."). It follows that, where a proposed collective action contains employees with varied job duties, who were allegedly misclassified as exempt under different FLSA exemptions (e.g., the administrative exemption and the automotive salesperson exemption), it fails to allege a discriminatory scheme common to all members of the putative class.

Rather than being subjected to a plan common to all proposed members, however, certain groups of employees within the proposed collective action may have been subjected to *different* "plans" or "policies" to deprive employees of legally due wages. These multiple plans may take the guise of different exemptions, based on different job duties. Thus, an overbroad proposed collective action may be amenable to subclasses, whereby each group of employees with similar job duties, classified as exempt under exemptions common to the group, could proceed separately. *See La Belle Farm*, 239 F.R.D. at 369 ("If the fruits of full discovery reveal that plaintiffs are not, in fact, 'similarly situated' to defendants' other employees, or that only employees who worked at the same facility or engaged in a particular job are "similarly situated," I may later decertify the class or divide it into subclasses, if appropriate.").

Here, as discussed above, the collective action includes employees in a variety of roles, with a range of job duties (for example, the Court presumes that "office staff" have different duties than "partsmen" and salespersons), subject to different exemptions. Plaintiff has made no showing that the work performed by *all* potential opt-ins is similar to her own. Indeed, Plaintiff's own job duties, first as a salesperson and later as an Inventory Manager, are very different. (*Compare* Romero Aff. ¶ 4 ("In the position of salesperson, my job duties included selling automobiles") *with id.* ¶ 10 ("My duties as Inventory Manager included keeping inventory of the automotive goods kept in the Sales Department.").) The proposed collective action members are also differently situated with respect to the two different exemptions at issue. For example, a putative opt-in salesperson claiming that her job duties demonstrate that she was misclassified as exempt under the automotive salesperson exemption is not similarly situated to an office manager claiming that her different job duties demonstrate that she was misclassified under the

24

administrative exemption. Thus, because putative opt-ins are not similarly situated with respect to their job duties or exempt-status, I cannot conditionally certify the whole class as it stands.

\*\*\*

Barring an unusual impediment, subclasses would be appropriate in this case. The proposed collective action is not subject to one "common plan," but a number of narrower "common plans." At a minimum, these alleged "plans" would include, based on the parties' moving papers: (1) misclassifying certain employees as exempt under the automotive salesperson/partsmen/mechanic exemption; (2) misclassifying other employees as exempt under the administrative exemption; and (3) denying non-exempt employees overtime. The first two classes would need to be further subdivided based on the positions and job duties at issue. For example, it may make sense to have a subclass of automotive salespersons and another subclass for partsmen, because their job duties may be different. However, since the Court has not been supplied with a full list of the job duties and positions at issue (i.e., it is impossible to determine what "unidentified non-managerial" employees do), it is in no position to do the work for Plaintiff, and construct the appropriate subclasses.

Furthermore, there are wrinkles in this case that prevent the Court from conditionally certifying any subclasses.

From June 2009 to November 2009, Plaintiff was employed by Defendants as an automotive salesperson. Automotive salespersons are exempt from the FLSA's overtime requirement if they were primarily engaged in selling vehicles. 29 U.S.C. § 213(b)(10)(A); *Williams v. Skyline Auto. Inc.*, No. 11 CIV. 4123 (SAS), 2011 WL 5529820, at \*3 (S.D.N.Y. Nov. 14, 2011). Indeed, Plaintiff admits in her own pleading that she was "*primarily* responsible for selling automobiles to Defendants' customers." (Compl. ¶ 28 (emphasis added).) Thus, from

25

June 2009 to November 2009 Plaintiff has no viable claim for overtime, and Defendants' motion for summary judgment dismissing Plaintiff's individual overtime claim for the period while she was a salesperson can and should be granted.

Having no FLSA claim of her own as a salesperson, Plaintiff is not similarly situated to non-exempt employees, if any, who potentially have such claims. *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 230 (S.D.N.Y. 2003) (*sua sponte* denying collective action certification where named plaintiffs were exempt from the FLSA's requirements, finding that "Having no FLSA claims of their own, plaintiffs [were] not similarly situated to those non-exempt employees, if any, who potentially have such claims.").

But Plaintiff also seeks conditional certification based on the job to which she moved *after* serving as an automotive salesperson. In November 2009, Plaintiff was given the title of Inventory Manager and moved off the sales floor. Her duties included "keeping inventory of the automotive goods kept in the Sales Department." (Romero Aff. ¶ 10.)

Defendants argue that "there is an issue whether Plaintiff was misclassified as exempt from overtime as an inventory manager . . . ." (Defs.' Opp'n to Certification at 10.) Frankly, her job duties as pleaded do not sound managerial at all — or even administrative. They sound clerical. No doubt that will be an important issue to be litigated.

But, at this stage, all Plaintiff was required to do was provide a modest factual showing that, as an Inventory Manager, she was similarly situated to other employees with respect to "a common policy or plan that violated the law." *Indergit*, 2010 WL 2465488, at *3 (quotations and citation omitted). This she has failed to do. Plaintiff was the only Inventory Manager ever hired by Defendants, and Plaintiff neither provides job descriptions for members of the proposed collective action, nor alleges that she had similar job duties to any other employee. (*See* Romero

Aff ¶ 16.) Although the Court is more than willing to use her common sense in the absence of job descriptions, *see Shajan*, 2010 WL 2218095, at *1 ("The Court has not spent her life under a toadstool — I know what waiters, busboys and bartenders do when they go to work."), it is not apparent in this case whether any other employees had similar job duties to Plaintiff, and, if so, were also classified as exempt under the FLSA (or any other "common policy or plan" to deprive employees of legally due overtime). Plaintiff is clearly not similarly situated to Defendants' salespersons, partsmen, or mechanics. There is also nothing in the record which could lead the Court to believe that Plaintiff was similarly situated with respect to the office staff members whom Defendants classified as exempt — the Court simply does not know what those employees do. Nor is Plaintiff similarly situated to non-exempt employees, for the reasons discussed above. Accordingly, because Plaintiff has not met her modest burden of showing that she — as an inventory manager — was similarly situated to any of Defendants' other employees, conditional certification is not appropriate. *See Morisky*, 111 F. Supp. 2d at 498.

For these reasons, Plaintiff's motion for conditional certification of her proposed collective action is denied. Plaintiff must proceed alone on her FLSA claims.

## III. Plaintiff's Motion for Class Certification is Denied

Turning to Plaintiff's motion for class certification of their state law claims, Plaintiff asserts violations of NYLL §§ 190 *et seq.* and 650 *et seq.*, and seeks class certification pursuant to Federal Rule of Civil Procedure 23.

Plaintiff encounters the same obstacles here as with her FLSA claim, i.e., that a determination of exempt status requires an inquiry into the specifics of Plaintiff's job and a similarly individualized inquiry into the specifics of each allegedly misclassified employee whom Plaintiff is seeking to join. *See Diaz*, 2005 WL 2654270, at *6-7.

27

## A. Legal Standard

### 1. Rule 23(a)

In order to obtain class certification under Federal Rule of Civil Procedure 23, the class proponent bears the burden of showing that *each* of the requirements of subsection 23(a) — numerosity, commonality, typicality, and adequacy of representation — is, in fact, satisfied. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008); *see also Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). The numerosity requirement provides that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotations omitted); Fed. R. Civ. P. 23(a)(2). Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. Fed. R. Civ. P. 23(a)(3). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted). The adequacy requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see generally Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

As the Supreme Court recently observed, the Rule 23(a) prerequisites "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 131 S.Ct. at 2550 (internal citations and quotation marks omitted). If even one of those requirements is not met, certification must be denied.

### 2. Rule 23(b)

In addition to satisfying the Rule 23(a) prerequisites, the class proponent must qualify the proposed class under one of the three subsection 23(b) categories. *Brown*, 609 F.3d at 476. Here, Plaintiff relies on subsection (b)(3).

Under subsection (b)(3), class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). "As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir.2006) (internal quotation marks omitted).

Courts determine whether Rule 23(b)(3) certification is appropriate by considering:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

*Oakley v. Verizon Commc'ns Inc.*, No. 09 CIV. 9175 CM, 2012 WL 335657, at *12 (S.D.N.Y. Feb. 1, 2012).

### 3. Burden of Proof

A district court must conduct a "rigorous analysis" to determine whether all the requirements of Rule 23 have been met. *Gen. Tel.*, 457 U.S. at 160-61. In the Second Circuit, factual findings necessary to this determination are made under the preponderance of the evidence standard. "The party seeking class certification bears the burden of establishing by a

29

preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010); *Teamsters*, 546 F.3d at 202-03 ("The preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements.").

The same standard applies whether the issue is independent of or overlaps with a merits issue in the case. *Id.*; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006). The certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court. *Id.* at 41.

In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide "whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common.*" *Myers*, 624 F.3d at 549.

### B. Plaintiff has Failed To Establish Commonality

Because I find that Plaintiff has failed to carry her burden of establishing commonality, I need not address Rule 23's other requirements.

*Dukes* instructs district courts that "What really matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." 131 S.Ct. at 2551 (internal quotation and citation omitted) (emphasis in original). Therefore, in order for there to be a legitimate "cause to believe that all [of a proposed class's] claims can productively be litigated at once," not only must those claims depend on a common contention, but that "common contention . . . must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

In *Gardner v. Western Beef Properties, Inc.*, the plaintiffs — managers and assistant managers — sued defendants —grocery store owners — alleging that the defendants failed to pay them minimum and overtime wages under the FLSA and NYLL. No. 07-CV-2345 RJD JMA, 2011 WL 6140518, at \*3 (E.D.N.Y. Sept. 26, 2011), *report and recommendation adopted sub nom. White v. W. Beef Props., Inc.*, No. 07 CV 2345 RJD JMA, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011). After the court conditionally certified a FLSA collective action, the plaintiffs moved to certify a Rule 23 NYLL class. In finding that the plaintiffs failed to establish commonality, the court concluded that the "determination of whether [a FLSA] exemption applied required 'individualized proof' for each plaintiff, and thus . . . the quantum of commonality required to satisfy Rule 23(a)(2) was not present." *Id.* at \*4 (citing *Myers v. Hertz Corp.*, No. 02 CV 4325, 2007 WL 2126264, at \*4 (E.D.N.Y. July 24, 2007), *aff'd*, 624 F.3d 537, 547 (2d Cir. 2010)).

Here, Plaintiff proposes the following as potential common questions: (1) whether Defendants kept accurate records worked by the class; (2) whether the class was scheduled to work and/or required to work in shifts of approximately 11 hours per day, 5 days per week; (3) whether the class was compensated for overtime pay pursuant to Defendants' policies; (4) whether the class was compensated at a rate less than the statutorily required minimum hourly rate of pay; and (5) whether Defendants have any affirmative defenses for any of these claims. (Pl.'s Mot. for Certification at 15.) After *Dukes*, though, the fact that Plaintiff came up with a list of common questions is no longer sufficient. *Dukes*, 131 S.Ct. at 2551 (the language of 23(a)(2) "is easy to misread, since any competently crafted class complaint literally raises common 'questions.'").

31

I find that Plaintiff has failed to state a "common contention" that is "central to the validity" of Plaintiff's claims. *Dukes*, 131 S.Ct. at 2551; *see also Gardner*, 2011 WL 6140518, at *3. Whether Defendants failed to keep records "is not a central consideration because it only affects the manner in which the Court will calculate the number of hours worked." *Gardner*, 2011 WL 6140518, at *3. The remainder of Plaintiff's proposed common contentions — whether putative class members worked overtime, and whether Defendants failed to pay overtime and minimum wage in violation of the NYLL — are important considerations in this case. But "they are not common one[s]." *Id.*

Indeed, the central question in this case is whether Defendants correctly or incorrectly classified the putative class members as exempt under the NYLL exemptions described above. *See id.* The resolution of this question is not capable of classwide resolution "because it will require individualized examinations of each plaintiff's daily responsibilities and duties while on the job." *Id.*; *see also Myers*, 2007 WL 2126264, at *4-5 (finding lack of commonality because the key issue, whether employees were misclassified as exempt, required individualized proof); *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 188-89 (finding that individual, rather than common, issues would predominate because an "individual assessment" of each employee's situation was necessary to determine if that particular employee was misclassified). Here, for example, the parties will need to litigate whether each of Defendants' salespersons were primarily engaged in selling vehicles.

Moreover, that Plaintiff seeks to certify a class consisting of employees in a variety of jobs — e.g., salespersons, porters, office staff, an office manager, an Inventory Manager, partsmen — that may be subject to *different* exemptions — for which different facts need be proved — or none at all, only reinforces my conclusion that a unified class is not appropriate.

32

The Court is careful to note that "Rule 23 does not impose upon plaintiffs the impossible task of showing that all class members have identical job responsibilities." *White*, 2011 WL 6140512, at *3 (E.D.N.Y. Dec. 9, 2011) (decided after, and considering, *Dukes*); *see also Myers*, 624 F.3d at 549. Certification is appropriate when the evidence shows that "the job duties of putative class members were *largely consistent* or when the individual employees' deposition testimony relating to their specific job duties is *generalizable*." *White*, 2011 WL 6140512, at *3 (quoting *Myers*, 624 F.3d at 549) (quotations omitted) (emphases in original). Another way individual plaintiffs can bridge the "conceptual gap" between their claims and those of the class that they claim suffered a similar injury is by "significant proof" that the employer acted under a "general policy" to engage in the allegedly unlawful conduct. *Dukes*, 131 S.Ct. at 2553 (quoting *Gen. Tel.*, 457 U.S. at 159 n.15); *White*, 2011 WL 6140512, at *5.

Here, Plaintiff has neither produced evidence that the job duties of putative class members are "largely consistent" nor offered "significant proof" that Defendants acted under a "general policy" to engage in allegedly unlawful conduct. What evidence Plaintiff has provided commands the opposite result.

In *Myers* and *Gardner*, courts refused to certify a class action where plaintiffs sought to certify classes consisting of employees with only one or two job titles. In marked contrast, Plaintiff is attempting to certify a class of consisting of — what Plaintiff *herself* calls — employees in "a broad array of job titles and functions." (Pl.'s Reply in Supp. of Certification at 9.) At a minimum, the proposed class would contain salespersons, porters, office staff, an Inventory Manager, and "unidentified non-managerial title."

Furthermore, Plaintiff's proposed class is even larger than her proposed collective action, and seeks to include "*All* persons employed by Defendants to perform *any* work in *any* of

33

Defendants' locations" who did not receive overtime or minimum wage. (Compl. ¶ 17 (emphases added); Pl.'s Mot. for Certification at 2). Her proposed class is thus not limited to non-managerial employees. But managerial employees are subject to yet another exemption, 29 U.S.C. 213(a)(1) (describing the exemption for "executive" employees, i.e., employees whose primary duty is management), which would need to be litigated. *See, e.g., Gardner*, 2011 WL 6140518, at *2. Further, under this broad description, there are likely other employees with different job titles and duties whom Plaintiff has failed to describe to the Court.

For the wide variety of employees whom Plaintiff seeks to represent, Plaintiff failed to produce any descriptions of job duties (other than her own in, in brief fashion) in any form — e.g., through written employer policies or deposition testimony — from which the Court could determine that the various job duties of putative class members were "largely consistent." As discussed above, Plaintiff did not even provide the Court with a complete list of the different job titles in the proposed class, even though she had the opportunity in class discovery to request them from Defendants. Plaintiff also concedes that these employees have a "broad array of . . . functions." (Pl.'s Reply in Supp. of Certification at 9.)

From what little evidence Plaintiff has offered the Court, the job duties of the proposed class are *not* consistent. For example, Plaintiff's job duties as an automotive salesperson were considerably different than her job duties as an Inventory Manager. (*Compare* Romero Aff. ¶ 4 ("In the position of salesperson, my job duties included selling automobiles") *with id.* ¶ 10 ("My duties as Inventory Manager included keeping inventory of the automotive goods kept in the Sales Department.").)

In addition, because Defendants did not uniformly classify *all* its employees as exempt under a single exemption, Plaintiff is unable to generalize from that fact that the job duties of her

putative class are "largely consistent." Even if Plaintiff did establish that Defendants made a uniform decision to classify all employees as exempt — which they did not, based on the record before the Court — such a decision only suggests that "some degree of homogeneity exists among the employees and is thus in a general way relevant [], [but] . . . is not itself determinative" of the certification inquiry. *Myers*, 624 F.3d at 959.

For all these reasons, it is clear that the job duties of all the putative class members are not "largely consistent."

Last, Plaintiff has also not produced any evidence — much less significant proof — from which the Court can even infer that Defendants had a "general policy" to illegally deny class members their rightfully due overtime wages. In order to make such an argument, Plaintiffs would have to contend that Defendants misclassified their exempt employees. But Plaintiff does not such thing. Plaintiff does not even argue that any of Defendants' employees — aside from salespersons, as discussed above — were misclassified as exempt. And Plaintiff offered no relevant evidence in support of her contention that salespersons were misclassified. (*See* Reply in Supp. of Certification at 4-5.) Thus, Plaintiff has failed to bridge the "conceptual gap" between her claims that those of the class. *Dukes*, 131 S.Ct. at 2553.

Therefore, because the proposed class is overbroad, and because Plaintiff failed to demonstrate that there are sufficient questions of law or fact in common between the putative class members, I find that Plaintiff has not satisfied her burden under Rule 23(a)(2). Accordingly, I must deny Plaintiff's motion for Rule 23 certification.

35

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiff's motion to certify the collective action and class action is denied.

The Clerk is instructed to remove the motions at ECF Nos. 23 and 26 from the Court's list of open motions.

Dated: May 1, 2012

_____

U.S.D.J.

BY ECF TO ALL COUNSEL